Lockett is a professional nurse. She is required to set for a state examination and cannot function as a professional unless she has that license from the state of Texas. Now HISD advertises for professionals and they set out the criteria that those professionals must meet and they also give them a job description. The primary issue in this case, what it comes down to is whether or not the assignment of a professional such as a nurse to perform functions that are outside their job description is an adverse employment action. That's what it comes down to. Now this is extremely important. We have 3 million nurses in the United States. 81% of our U.S. population are professionals, which is, not 81%, 81 million in 2015 were professionals which equated to about 51% of the U.S. working population. If you'll look at Exhibit 1 of Lockett's exhibit, you'll see the kind of employee she was. If you'll look at Exhibit 4, pages 16 and the top of page 17, you will see what personal services are and the kind of services what a nurse is expected to perform. If you'll look at Exhibit 2, you'll see what an IEP is. An IEP is an Individual Educational Program and if a disabled student is required to have medical intervention at any stage in their education, then it's in that IEP. This isn't medical intervention. That's what nurses do. Nurses only… I remember you said if a student requires medical intervention. This is a disabled young woman who needed diapers changed. Who else to do that other than the nurse? Who would you recommend doing that at the school? Well, the school district hires what's called teacher's aides and that is their specific assigned duty to change those diapers. Now where does it say that? Ma'am? Did you argue that? There's no evidence that that's their specific duty. A teaching aide? It's in the record. Where? It's in the record. I can't tell you which page it's on as we speak, but that was discussed during the trial. Are they men or women, these teacher's aides? Oh, they can be either one. Well, didn't the parent of this young student, didn't he request that a woman do this, not a man? Well, there's a claim that that happened, but there's no real evidence of that. There's a claim that it happened. Makes sense. Okay, that does make sense, but it did not have to be a registered nurse to change a diaper. They have, number one, that responsibility falls to the teacher's aide. Number two, it falls to the teacher. And there's a responsibility of the principal who has all the money she needs to hire anybody she needs to hire to hire somebody to do that. She's got a nurse. But that's not what nurses do, Your Honor. Nurses are professionals. If you look at the… You go to any hospital, nurses… Hospitals, they have orderlies. They have nurses also, practical nurses. Yes, ma'am, but the nurses in hospitals don't change diapers. That's done by the orderlies. Well, I'm not sure that's right. Well, all right. If we're not going to treat professionals as professionals, then it destroys the whole need of having professional employees. You wouldn't take a lawyer and have a lawyer to perform secretarial duties. You wouldn't have an engineer to perform custodial duties. Why would you have a registered nurse to perform duties that are normally assigned to teachers' aides or to the teacher? But at any rate, the other thing that I want to point out in this case is that the court gutted Lockett's sex discrimination claim with the erroneous instruction that he gave number seven. Error number two, the district court's instructions on ADA was erroneous. When he told the jury that Lockett had to prove that her age was the only reason HISC decided not to renew her contract. And error number three is the trial's court's continuous interference in the trial, his comments, and his showing that he was biased. And he conveyed that bias against Lockett to the jury. What's the most biased example of the judge's comments? The judge would ask questions such as what does that have to do with proving sex discrimination or what does that have to do with proving age discrimination? And at one point, he lectured me for I don't know how long on leading questions. I'm a seasoned lawyer. I know what a leading question is. And there was no need, there was no justification for lecturing me about leading questions apart from making me look. I've seen that same lecture in that same court. I don't think it's necessarily directed at you. I think it's in large part for the aid of the jury so they understand when there's objection, someone says leading. This judge likes the jury to understand what all this lawyer talk means. So I don't think it's something you should have taken personally. Judge, you weren't there. You don't know what— I've seen the same, with the same hypotheticals that he gave in your case. I've heard that same lecture in that same court. So I don't think it was something that's personally directed at you or out of the ordinary, but that's fine. Judge Hittner was biased. It was obvious to me that he was biased. It was obvious to my client that he was biased, and it was obvious to the jury where he stood in this case. He was against Lockett. Why? What was the bias? What was the foundation of the bias? I don't know what the salvation was. All I know is it happened. What was the reason for the bias? Because she was a woman? Because she was Catholic? I mean, because she was a nurse? What's the bias? Judge, this is the kind of problem that you consistently run into when you're handling a Title VII case. Consistently. His bias is that he's for the school district and against any employee. He let it get to trial when the school district had some pretty strong arguments about the statute of limitations, about adverse employment action. I mean, it doesn't seem like—and you know the percentages of how few of these cases get to trial, so I don't think that's consistent with bias. Well, you're apparently a defense lawyer. But at any rate, Your Honor, I would ask you to look at my brief very closely. I believe it has merit. I don't think that we have done a very good job. We've had Title VII for almost 53 years, and we have not eliminated discrimination in the workplace. And the rate we're going, it will be another 53 years before we get it done. Now, changing diapers is an adverse employment action not for everyone, but it is for a nurse, for a registered nurse. You don't attend school to learn how to change diapers. That's a service that one can perform with little or no training. The district court's instruction on adverse employment is just completely wrong. The Fifth Circuit in 11.15 has the jury charge that is to be used on adverse employment. Why do you think a teacher's training and duties include the diaper change but not the nurse? Well, the teachers are responsible for the classroom management of the child. If you look at the idea manual, which I believe is Exhibit 2, it sets out in there all of the things that are required of a school district in the management of disabled students. Every school, all disabled students ought to be sent to schools who have the equipment and the staff necessary to render services to those disabled students. It's in the idea manual. The idea manual is federal legislation, federal law that governs this. Now, I think clearly whether or not the responsibility of changing diapers by a nurse was an adverse employment action was a fact issue that should have been submitted to the jury, and in this particular case it was not. What's the basis for your allegation of sex and age discrimination? She was 60, I think, three years old. She's a female. There were numerous younger people in a lesser classification, male and female, who should have been ordered to perform these duties. They were not. They were all skipped over, and she was ordered to do them. Are those the teacher's age you're talking about? Some of them are teacher's age. What are the other ones? Teachers. But these are special education teachers, Your Honor. Right. They're assigned to the classroom where the student is assigned. If you see in the idea manual, I believe it's Exhibit 2, it shows that each classroom to which these disabled students are assigned are to have all of the equipment necessary to render services to that particular student. They're required to have that, and the federal government provides them with all the money they need to buy all of that equipment and to staff up to do these things. Well, isn't that why the school had a nurse? That's what, ma'am? Isn't that why the school had a nurse in case these disabled children had some? To render medical treatments, Your Honor. If the IEP, which I told you about, if the student is to have medical intervention, it's in that IEP. If it's not in that IEP, then there's no need for medical intervention, and that's all nurses do is medical intervention. Nurses don't perform personal services, just medical services. Well, there's a function of cleanliness you have to take into consideration. If some child is throwing up all over themselves, the nurse helps, not the teacher. It's the same thing with a dirty diaper. Well, but that's the teacher's responsibility. You have to eliminate the problem. That's her job responsibility, not the nurse's job responsibility. It's not in her job description. Stop teaching the other students and go. . . You're not going to do it in the middle of class, so you've got to go somewhere else to change the diaper, and the other students are just sitting there unattended. That's why she has a teacher's aide, Your Honor. They don't all have teacher's aides. Well, HISD is the largest school district in Texas. They have 215,000 students. They have 16,000 special education students. So they're well-equipped to handle these students. During the trial, there was testimony by the superintendent of special education about all of this. Her name was . . . I forgot her name. But at any rate, it's clear in the transcript of the trial, the superintendent for special education. She testified about all of that. I believe her name was Kumar. Now, my time is up. You've saved time for rebuttal, Mr. Cooper. Yes, sir. Rush. May it please the Court. As framed by Ms. Lockett both in the trial court and here today, she's focused her case on the idea that the backup diaper-changing assignment was an adverse employment action. But Lockett brought discrimination claims below. And under this Court's well-settled precedent, adverse employment action must be an ultimate action. Hiring, firing, demotion, significant change in responsibilities. Here, Lockett cannot show that an adverse action was taken against her simply by being assigned a backup diaper-changing assignment. It's undisputed that the district did take an adverse employment action when it non-renewed Lockett's contract, thus terminating her employment. But in the trial court, Lockett focused her claim exclusively on the idea that the diapering assignment was an adverse action. The trial court properly instructed the jury that the diaper-changing assignment was not an adverse employment action, but left alive Lockett's ability to try the case to her termination. Unfortunately for Lockett, she had no evidence that there was any either age or gender discrimination that led to her termination. When asked at trial whether she could say that HISD's board acted with discriminatory animus, her testimony was, I can't say. I couldn't say that. That alone negates her claim. If the trial court had not placed the limiting instruction inside the adverse employment action instruction, the jury would have been left with the mistaken impression that assigning a nurse backup diaper-changing duties was an ultimate employment action. It's important here to understand that this was only a backup assignment. The teacher in the classroom had ultimate responsibility. However, the teacher in JE's class resigned. The next line would be a teaching assistant. In this case, it was Dale Staggers. Ms. Staggers, however, was excessively absent, and HISD placed a long-term substitute in the classroom, Ms. Collins. Because she was merely a substitute, the principal formed the belief that it would be appropriate for the nurse to take on the backup diaper-changing assignment. As you pointed out, Judge Clement, there is evidence in the record that the father had requested that men not change JE's diaper, and the principal accepted that request and thought it would be in the best interest of the child to allow a female, and in this instance a nurse, to perform the diaper-changing assignment. The evidence at trial was undisputed, and as reflected in your questions here today, that changing diaper can be within the scope of a nurse's duties. It was also undisputed that the principal, both under Lockett's job description and her employment contract, had the ability to assign other duties as required. That's all that happened here. To suggest that the assignment in a backup capacity of an additional duty that's wholly within the scope of someone's employment as an adverse action has no support in the law or the facts. So here, with respect to Lockett's first issue, the trial court properly instructed the jury on adverse action. It instructed the jury under this court's precedent that it must be an ultimate action and identified for the jury the only ultimate employment action in the case. At the charge conference, Lockett attempted to obtain a more expansive definition of adverse employment action by relying on retaliation case law. As the court knows, the standard for retaliation cases is different, and it is, in fact, a lower standard. It does not require an ultimate action. It's not error for the trial court to reject a proposed charge instruction that does not accurately state the law. That wasn't ever claimed, was it? It wasn't in the petition. Retaliation? No, Your Honor. It was not a claim that was tried. Only the discrimination claims were tried. And because Judge Hittner gave a charge that accurately tracked governing law and this court's precedent, there can be no error in that first instruction. Ultimately, Ms. Lockett tried her case to the wrong theory. She tried the case on the wrong adverse employment action or what, in fact, was not an adverse employment action. What about the causation instruction? Do you concede that's error? It was erroneous, Your Honor, yes. Unfortunately, that was error. However, in this instance, it's not reversible error, and it's not reversible error for two reasons. The first is at the charge conference, Lockett failed to make a specific objection to the defect in the charge. Her objection was limited to the statement that it is not the correct law. That objection didn't meet Rule 51's requirements because it did not provide Judge Hittner with any particularity on how he could fix the defect in the charge. Because of that, Ms. Lockett did not preserve error, and this court doesn't review that error under the traditional standard for jury instruction, but Ms. Lockett is limited to plain error. And under the plain error standard of review, Ms. Lockett cannot show either that her substantial rights were affected or that the error would call into question the integrity of judicial proceedings. Here, her substantial rights weren't affected for the simple reason that she tried the case to an event that was not an adverse employment action. Having tried the case under that theory, no matter how the jury was instructed on the causation point, the jury was going to be left with absolutely no evidence of discrimination, as evident by the fact that the jury found no evidence of discrimination on the gender claim, which had a separate causation instruction. And what happened when you moved for judgment as a matter of law after the conclusion of the evidence? Yes, Your Honor. After the conclusion of the evidence, HISD moved for judgment as a matter of law on the grounds of one, no evidence, which the trial court denied and permitted the case to go to the jury, but also re-urged an argument that had been made at summary judgment, and that was that Ms. Lockett's charge of discrimination was untimely. And because of her failure to timely file a charge of discrimination, the case should have been dismissed on summary judgment and never proceeded to trial in the first instance. And that is, in fact, the case here. It's well-settled law that an employee has 300 days to file a charge of discrimination from the date of an adverse action. Here, and in this case Ms. Lockett maintains, the adverse action was being assigned the backup diapering assignment. Undisputed, she knew that by March of 2014 that she was, excuse me, that the principal had issued a directive to her for failing to comply with that assignment, yet she did not file her Texas Workforce Commission charge until February of the following year. More than 300 days. Roughly 330 or so days. That was sufficient to render the case untimely, and frankly the trial court erred when it didn't dismiss the case on summary judgment and didn't dismiss the case at the motion for judgment as a matter of law stage. Now, where we sit today, even if the court were to find that there were reversible error in the causation instruction solely on the age claim, which I don't think the court should, the court should nonetheless affirm the trial court's final judgment for the simple reason that the claims were untimely. Now, this was urged at summary judgment, it was urged at the motion for judgment as a matter of law stage, and it was urged in our brief. Now, Ms. Lockett did not file a reply brief before this court, so she hasn't responded to that argument, and it stands unchallenged at this point. And I think there really is no challenge. Having told the court, both in her briefing and here today, that the adverse action was the backup diaper-changing assignment, her claims are untimely. She's failed to show reversible error. The court has no further questions. For the district, I'll yield the remainder of my time and urge that the court affirm the trial court's final judgment. All right. Thank you, Mr. Brush. Mr. Cooper, you've saved time for rebuttal. Well, the Fifth Circuit clearly provides us with the jury charge that is to be used in an adverse employment action. Fifth Circuit cases have addressed the issue of what constitutes an adverse employment action. Those cases are cited in my brief, but the latest one was the city of Waco, Thompson v. the city of Waco, which was in 2014. Now, the examples given in those cases is that changes in or loss of job responsibilities, similar to transfer or reassignment, are changes that are so significant and material that they all arise to the level of being an adverse employment action. So we have clear definitions on what constitutes an adverse employment action, and we also have the jury charge that we are to use, and the pattern jury charge is 11.1. And if you look at footnote one, it states that in cases where there is no dispute about whether or not the action by the employer constitutes an adverse employment action, the challenge action should simply be identified for the jury as the first element of the plaintiff's burden of proof. And the same is if there are factual disputes about whether or not the challenge action is an adverse employment action, then there are instructions on how that is to be charged to the jury. Insofar as the limitations are concerned, let me address that. Just a minute. Okay. Claim that Lockett's complaint with the Texas Workforce Commission was filed untimely is also unworthy of credence. Lockett filed her complaint on February 9, 2015, and the district argues that that's more than 300 days, and it bars it. First, and even assuming that that argument is correct, Lockett filed her complaint under the continuing violation theory, and the conduct about which she complained, if any of it occurred within an actionable period, then the plaintiff can show a series of related acts, one or more of which falls in the limitation period, then she's okay. The Mashir v. Marino case, which is at 1-30, Fed 3rd, 1997, addresses that issue. And in this case, Lockett shows a series of related acts, including discriminatory and mandatory diaper-changing responsibilities, one or more of which all occurred within the limitation period and included the notice of her termination that fell within the limitation period. And secondly, failing to raise the 300-day statute of limitations You can finish your sentence. During the jury charge, wage it. All right. Thank you, Mr. Kupfer. Thank you. Your case and all of today's cases are under submission.